HOLMES *against* THE UNITED INSURANCE COMPANY.

A policy of insurance was effected on the cargo of a ship from Calcutta to
  · Baltimore, by A. as the agent of B. and for his account.   The policy was
  in the name of A. generally, for 25,000 dollars, as interest might appear.
  The cargo belonged to B. and four other persons, and was purchased with
  the proceeds of the outward cargo.   B. carried on business for himself, and
  was unconnected in trade with the other persons, who knew nothing of the
  insurance.   The proportion of the return cargo belonging to B. in fact
  amounted only to about 13,000 dollars.   B. brought an action for a return
  of premium, for the difference of the sum subscribed to the policy, and the
  amount of his interest ; it was held, that B. and the four others were not
  partners, and that B. was entitled to recover back the premium for the
  amount of his interest over valued in the policy.
If property be insured to a larger amount than the real value, the overplus
  · premium is recoverable by the assured, because the insurer shall not re-
  ceive the price of a risk which he has not run.   Per *Kent, J.*
To constitute a partnership, there must be a reciprocal choice and agreement
  of the parties to unite their stock and to share in all risks of profit and loss.
  They must not only be jointly concerned in the purchase, but jointly con-
  cerned in the future sale.   Per *Kent, J.*

THIS was an action of *assumpsit* for a return of premium
on a policy of insurance.

· In December, 1796, Gouverneur and Kemble, as agents for the plaintiff, effected an insurance on the cargo of the

ship George and Patty Washington, to the amount of 25,000 dollars, interest as may appear, at and from Calcutta to Baltimore; and the defendants accordingly underwrote the policy to the amount of $25,000 on the cargo generally, in the name of the agents. The premium was seven per cent. amounting to 1750 dollars and 25 cents, and was paid to the defendants on the 6th of August, 1797. The cargo of the ship belonged to the plaintiff and four other persons, and was purchased with the proceeds of the outward cargo, which also belonged to the same persons. One-eighth of the ship, and of the outward and return cargoes belonged to [*330] the plaintiff, *who carried on business for himself, unconnected in trade with the other four persons. The other four persons had no direction or concern in the insurance, or any other insurance effected by the plaintiff. The plaintiff's instructions to his agents were to effect insurance to 25,000 dollars on the cargo of the said ship, on his account. The whole cargo of the ship amounted to 103,439 dollars and 54 cents, of which the plaintiff's one-eighth were 12,929 dollars and 94 cents, so that 14,200 dollars would cover the interest of the plaintiff and the premium, &c. The plaintiff directed the supercargo of the ship to apply at Calcutta for a credit for him, and to make a shipment. But the supercargo did not obtain credit, nor make any shipment other than the plaintiff's share above mentioned. The plaintiff claimed for a return of premium, on the

petent to the banker and his customer to agree that the banker shall have a lien on all property on which the customer can lawfully give it, which may come to the hands of the banker; and this agreement may be expressed in words, or may be inferred from the course of trade; but it is not competent for them to agree expressly or in any other manner, that the bankers shall have a lien on the property of other persons on which the customer had no authority to give one.' (*Brandao* v. *Barnett*, 2 Scott, N. R. 113; Russ. Fact. & Brok. 200.) And so it is manifest, that a factor or broker and his principal are not competent to enter into any such agreement." (Russ. Fact. & Brok. 201. Consult Mr. Duer's review of *Snook* v. *Davidson, Lanyon* v. *Blanchard, Maans* v. *Henderson, Mann* v. *Forrester*, 4 Campb. 60; *Westwood* v. *Bell, Levy* v. *Barnard*, 8 Taunt. 149; S. C. 2 Moore, 34; and *Foster* v. *Hoyt;* 2 Duer on Ins. 353–361. See the remarks of Mr. Paley upon *Mann* v. *Shifner*, 2 East, 523, 529, Agency, 149.)

Holmes v. United Ins. Co.

difference between the subscription of the defendants and the interest of the plaintiff, amounting to 891 dollars and 52 cents. The ship arrived safe at Baltimore.

*S. Jones*, jun. for the plaintiff.

*Troup*, .contra.

KENT, J. delivered the opinion of the court. There is no doubt but that if property be insured to a larger amount than the real value, the overplus premium is recoverable by the assured, because the insurer shall not receive the price of a risk which he has not run.(*a*)

On the other hand, if the risk has once commenced or existed, there shall not be any return of premium, as the consideration for it has then been given.(*b*)　　(Park, 367.) The recovery in the present case, therefore, depends on the solution of the question, whether the other persons interested in the cargo, could, in case of loss, have covered any part of their interest under this policy. *If [*331] they could not, then the defendants have run no risk beyond the amount of the plaintiff's interest on board ; and I think, from the facts before me, that such must be the conclusion of law.

To constitute a partnership, by which the act of one will bind or enure to the benefit of the rest, there must be a reciprocal choice and agreement of the parties to unite their stock, and to share in all risks of profit and loss. (Watson, 1, 5. 1 Doug. 371. 2 Bl. Rep. 998.) They must not only be jointly concerned in the purchase, but jointly concerned in the future sale. (1 H. Bl. 48.)(*c*)　　In the case of *Hoare* v. *Dawes*, (1 Doug. 371,) a broker was employed by a number of persons to purchase a lot of tea, of which each was to have his separate share ; and he purchased the lot of tea for

(*a*) See 2 Phillips on Insurance, 529, 530·; Loccenius, l. 2, c. 5, § 8 ; *Amery* v. *Rodgers*, 1 Esp. 207 ; *Pollock* v. *Donaldson*, 3 Dallas, 510.

(*b*) See *supra*, vol. 1, p. 313, n. (*a*) to *Delavigne* v. *The United Insurance Co.*

(*c*) See Story on Part. ed. 1841, p. 47 ; 3 Kent's Comm. 25, 26 ; Collyer on Partn. by Perkins, 14–19 ; *Post* v. *Kimberly*, 9 Johnson, 470 ; *Harding* v. *Foxcraft*, 6 Greenleaf, 76.

the benefit of his employers; and it was held that they were not partners in the tea, because there was no undertaking by one to advance money for another, nor any agreement to share with one another in the profit or loss. And Lord Mansfield observed that it would be most dangerous if the credit of a person who engages for a fortieth part, for instance, should be considered as bound for all the other parts. And in the case of *Coope and others* v. *Eyre and others*, (1 H. Bl. 37,) several persons entered into an agreement to purchase a quantity of oil in the name of A. only, and to take *aliquot* shares of the purchase; but as it did not appear that they were jointly to resell the goods, they were held not to be partners. There was no communication between the buyers as to the profit or loss. Each party was to have a distinct share, and to manage it as he judged best; and of consequence, the profit or loss of the one might be more or less than that of the other.

In the present case, there is no evidence of any agreement or communication between the parties as to profit or loss, but what arises as a matter of intendment, from the fact, [*332] that the cargo of the ship belonged to the *plaintiff and four other persons, and was purchased with the proceeds of the outward cargo, which also belonged to the same persons. To repel this inference, we have the other fact found, that the plaintiff carried on business for himself unconnected in trade with the other persons; and that the present insurance was made for himself, and that the other persons had no direction or concern therein.

It is a strong and decisive fact in this case, that there was no agreement between the parties to share in the future sale of the return cargo; and the presumption is directly otherwise since the parties were unconnected in trade. This brings the case within the decision in *Coope and others* v. *Eyre and others*. The parties were not, in fact, partners, as amongst themselves, nor did they professedly act or appear as such. The plaintiff appears to have acted with candor, and to have directed an insurance on his own account, as interest should appear. The over valuation must have

Holmes v. United Ins. Co.

originated in mistake, in too high an estimate of the result of the outward cargo, and in the expectation of an additional cargo to be procured on credit at Calcutta.

We are, therefore, of opinion that the plaintiff was not a partner, and that he is consequently entitled to the return of premium, as liquidated in the case.

Judgment for the plaintiff.(*d*)

(*d*) As a general proposition, an insurance made by one partner for the benefit of his firm, will be valid to cover the interest of the firm. (Story on Partn. ed. 1841, p. 150, and references in n. (1.) 2 Duer on Ins. 98, 99. 2 Kent's Comm. p. 41. 1 Phillips on Ins. 161. Collyer on Partn., Perkins ed. 438.) But the rule is otherwise where an insurance is made on account of persons who are merely tenants in common or joint owners. In that case, the right of a part owner to insure is limited to his own individual share. (1 Phillips on Insur. 161, *et seq.* 2 Duer on Insur. 99, 157. Abbott on Shipp. 77, n. *Turner* v. *Burrows*, 5 Wend. 541. S. C. 8 id. 144. *French* v. *Backhouse*, 5 Burr. 2727. *Bell* v. *Humphries*, 2 Stark. 345. *Hooper* v. *Lusby*, 4 Campb. 67. *Foster* v. *U. S. Ins. Co.* 11 Pickering, 85. Consult Mr. Duer's review of these cases, 2 Ins. 157–160.) Mr. Duer remarks, (2 Ins. 99,) " This distinction between the rights of a partner and of a part owner, is a necessary result of the essential difference in the nature of their respective interests. The interest of a partner is in the entirety of the joint property, and his rights of disposition and control are co-extensive ; but the share of a part owner, although undivided, is his distinct property, and consequently, he has the sole power to make or authorize any contract in relation to its disposition or use. The several owners of a ship are generally part owners ; but the ship may be in whole or in part partnership property, and when it is so, the right of each partner to make an insurance on the vessel or freight, co-extensive with the interest of the firm, is undoubted. But a part owner has no such right even when he is the managing owner, that is, when the fitting out and employment of the ship are confided to his direction. A ship's husband has no such authority, and it cannot spring from the union in the same person of two characters, to neither of which it separately belongs."