### ADMINISTRATORS OF JAMES SUYDAM v. LEWIS COMBS.

If two or more tenants in common, of a chattel, unite in a sale of it, the right of action for the consideration money, is joint; and they cannot sue the purchaser in separate actions, for the respective portions of the money; *unless* it be upon an agreement by the purchaser, to pay to each of them, his particular share of the money. An order drawn by the defendant on and accepted by the intestate, in favor of a third person, but not taken up and paid off by the administrators, till after the commencement of the suit, is not competent evidence in an action brought by the administrators of the acceptor, against the maker; for the mere acceptance does not give the acceptor a right of action against the drawer, any more than the endorsement of a note for the accommodation of the maker, gives the indorser a right of action against him, before payment.

Where the defendant said, upon being shown the note in question, "it was right," and that he would not object to its "coming in on the trial," the note ought to have been received, and the whole matter submitted to the jury, under proper instructions from the court.

Can the loss of the defendant's account book, be proved by his own oath? Quere.

This was a writ of error directed to the Court of Common Pleas, of the county of Monmouth. The questions argued before this court, appear in the opinion of the court, which was delivered by the Chief Justice.

*Randolph*, for the plaintiff in error.

*Ryall*, for defendant.

HORNBLOWER, C. J. The plaintiffs in error, were the plaintiffs below, in an action of *assumpsit*, against Combs the defendant in error. The declaration contains four counts, viz: 1st, on a promissory note given by the defendant to the intestate. 2d, for goods sold and delivered, money lent, and money laid out and expended by the intestate, for the defendant, and for money had and received by the defendant for the use of the intestate. 3d, for interest due to the intestate in his lifetime; and 4th, upon an account stated between the plaintiffs as administrators, and the defendant; but all the promises are alledged to have been made *to the intestate*, except in the last counts. On the trial of the cause, seven bills of exception were taken by the plaintiffs, on which, errors have been assigned in this court. The 1st and 2d bills of exceptions involve substantially the same points, and will therefore be considered together.

Suydam *v.* Combs.

The plaintiffs offered to prove that a certain horse belonging equally to the intestate and his brother, Cornelius Suydam, had been sold by the defendant for them, for $250—that the money had been received by the defendant; one half of which, the plaintiffs sought to recover in this action. The court overruled this evidence, and in doing so, are supposed to have erred.

The plaintiffs' counsel seems to think that the correctness of this decision, depends upon the question, whether Jacob and Cornelius Suydam were partners in respect of the horse, or only tenants in common; and supposes that if they were *partners*, the decision was proper; but if only *tenants in common*, that then the evidence was admissible, and the plaintiffs entitled to recover one-half the money received by the defendant, on the sale of the horse. In this, I apprehend the counsel for the plaintiffs, is mistaken—admitting that the horse belonged to the intestate and his brother, as tenants in common, it does not follow that they could bring separate actions for their respective portions of the money. LITTLETON says, "tenants in common shall have a joint action *only* for an injury to their tenements in common, because the action is in the *personalty*, and not in the *realty*,"—*Co. Litt. Lib.* 3, *sect.* 315, *Fol.* 197 *b.*—and the commentator adds, "by this it appeareth, that tenants in common shall have personal actions *jointly;* and if one of them die, the survivor of them shall have the action." And again; "albiet the property or estate be *several* between them, yet the personal action is joint;"—once more he says, "there is a *diversitie* betwen *a chattel in possession*, and a personal *chose in action*, viz: if two tenants in common, be of land, and a trespass be done therein; of this action they are *joint tenants*, and the right of action shall go to the survivor. But if two tenants in common, be of goods in possession, as of an horse, &c.: there, if one die, his executor shall be tenant in common with the survivor." *Co. Litt.* 118, *a. Id. lib.* 3, *sect.* 322, 199 *b.* and 200 *a.*

If then an injury had been done to the horse, the owners could not have had separate actions for the damages, any more than they could have had several actions of replevin, or detinue or trover, each for a moiety of the horse. *Co. Litt, lib.* 3 *sect.*

Suydam *v.* Combs.

314, *fol.* 199, *b.* The reason is, that though their title to the horse, is several, the right of action is joint. So, if two or more tenants in common of a chattel, unite in a sale of it, their right of action for the consideration money, is joint; and they cannot sue the purchaser, in separate actions, for their respective portions of the money; *unless* it be upon an agreement by the purchaser, to pay to each of them, his particular share of the money. So was the case of *Bunn and al.* v. *Morris and al.* 3 *Caines' R.* 54, cited by the plaintiffs' counsel. The court sustained an action by one joint owner of merchandize, for his share of the money, against the commission merchant, upon his express agreement to pay each one his portion. The case of *Hall* v. *Leigh*, 8 *Cranch R.* 50, is to the same effect. Two joint owners of merchandize, consigned it to a merchant for sale, informing him by separate letters, that they each owned one moiety, and giving separate and variant instructions, as to the terms of sale, and the disposition to be made of the proceeds of their respective shares. The consignee acted under these instructions, and he was held liable in a separate action, for a violation of them.

The case under consideration is very different. The intestate and Cornelius Suydam, delivered their horse to the defendant. to sell for them; they thereby constituted him their *joint* bailee; as such he is accountable to them jointly and not separately—they had a joint action against him, for the money he received for the horse, and of course that action has survived to Cornelius, or if he is also dead, then to the representatives of the one that survived the other. And this is reasonable; for upon a *general* bailment by twenty tenants in common, or joint owners of a chattel, it would be most unjust to subject the bailee to twenty actions for the proceeds of the sale, and thus compel him to settle the accounts between them, adjust their several equities, and ascertain their respective proportions, which may be unequal, and disputed among themselves.

The cases cited by the plaintiffs' counsel, are not applicable: several of them only show, what is fully conceded, viz:—that tenants in common, of a chattel in possession, are not partners, and that in such cases, the right of survivorship does not take

place. *Nichol* v. *Mumford*, 4 *Johns. C. R.* 422, was a case in equity, and only shows, that one tenant in common, has no right to possess himself of the whole proceeds of the property, and to retain it to satisfy claims he may have against his cotenant, after notice that the share of his co-tenant had been previously assigned for a valuable consideration.

*Livingston* v. *Lynch*, 4 *Johns. C. R.* 573, only asserts, what is unquestionably true; that each tenant in common, of a chattel, has entire dominion over his share of it; but it does not establish his right to a separate action for the proceeds of a joint sale of the chattel. *Post and al.* v. *Kumberly*, 9 *Johns. C. R.* 470, was a bill for discovery and account, and the defendants who had received the proceeds of property, of which the plaintiffs with others had been tenants in common, were decreed to pay to the plaintiffs, their aliquot portion. *Holmes* v. *U. S. Ins. Co.*, 2 *Johns. Cas.* 329, and the cases there cited, only relate to the question of what constitutes a partnership, and what a tenancy in common.

3d, The plaintiffs offered in evidence, an order drawn by the defendant on the intestate, in favor of O. Herbert for $81 25, dated April 16th, 1826, and accepted by the intestate in writing on the back of it. This acceptance had been taken up and paid off by the administrators, after the commencement of this action. The defendant objected to this draft being given in evidence, and the court sustained the objection.

In this decision too, I think the court were right. The cause of action did not arise, till after the commencement of this suit. Suydam himself could not have maintained any action for money paid on this order until he had taken it up and paid it off, or otherwise discharged the defendant from his liability to the holder of the bill. The mere acceptance of a bill, does not give the acceptor, a right of action against the drawer, any more than the indorsement of a note for the accommodation of the maker, gives the indorser a right of action against him, before payment. The case of *Smith* v. *Smith*, 2 *Johns. R.* 235, only shows what is not denied, that the plaintiff may give in evidence, a promissory note made by the defendant, under the general money counts. But then it must

Suydam *v.* Combs.

appear, that the money has been paid for the defendant, or at least that his liability to pay has been discharged. *Cumming and al.* v. *Hackley*, 8 *Johns. R.* 202; *Tayler* v. *Higgins*, 3 *East.* 162; *Spurrier* v. *Elderton*, 5 *Esp. N. P.* 1; *Barclay and al.* v. *Gooch*, 2 *Esp. N. P.* 71.

4th. The next error assigned, is on the refusal of the court to admit in evidence a promissory note, given by the defendant to one Schenck, and assigned to the intestate.

The signatures of the defendants, and of Schenck the indorser, were not proved; but a witness for the plaintiffs, testified in substance the following, viz: that at an interview between the plaintiffs' attorney and the defendant, shortly before the trial came on, the note in question was shown to the defendant, who said "it was right," and that he would not object to its "coming in on the trial." The plaintiffs' attorney also testified, that the defendant came with some of the plaintiffs' witnesses, to his office, to admit certain matters, (of which this however was not one,) so that the witnesses might be dispensed with, and not detained at court; that while there he showed the defendant this note; upon which the defendant said, "it was right, and he would not object to its coming in, in this suit." Upon this evidence, the note ought to have been received, and the whole matter submitted to the jury, under proper instructions from the court. In not doing so, the court committed an error; and for that reason, the judgment must be reversed. This renders it unnecessary to examine the remaining bills of exception;— though I am inclined to think, the court also committed an error, in admitting the loss of the defendant's account book, to be proved by his own oath. I am not prepared to sanction the doctrine, supposed to be established by the case of *Jackson* v. *Frier*, 16 *Johns. R.* 193, and that of *Taylor* v. *Riggs*, 1 *Peters' U. S. R.* 591. But without expressing any opinion upon that point, the judgment must be reversed, for the reason already assigned.

FORD and RYERSON, Justices, concurred.

*Judgment reversed.*